CARLIE CHRISTENSEN, Acting United States Attorney (#0633)
STEWART C. WALZ, Assistant United States Attorney (#3374)
CY H. CASTLE, Assistant United States Attorney (#4808)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111-1506
Telephone:  (801) 524-5682
Facsimile:  (801) 325-3261

FILED
U.S. DISTRICT COURT
2010 JUL 29  P 12:52
DISTRICT OF UTAH
BY:_____
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>STEPHEN E. GARCIA,<br><br>        Defendant. | Case: 2:10-cr-00673<br>Assigned To : Benson, Dee<br>Assign. Date : 7/29/2010<br>Description: USA v.<br><br>**INDICTMENT**<br><br>Viol. 18 U.S.C. §§ 157(2) (Bankruptcy Fraud); 1341 (Mail Fraud); 152(2) (False Bankruptcy Oath); 2(b) (Willfully Causing Another to Commit a Federal Crime) |

The Grand Jury charges:

### Introduction

At all times material to this indictment,

**A.   The Chapter 11 Bankruptcy Process**

1.   A chapter 11 bankruptcy case is typically a business reorganization that begins with a debtor filing a voluntary petition under Title 11 of the United States Code.

2.   Upon filing the voluntary petition the chapter 11

debtor automatically becomes a "debtor in possession," keeping possession and control of its assets while continuing to manage and reorganize its business until a plan of reorganization is confirmed.

3. The debtor in possession has the right, with the court's approval, to employ attorneys to represent the debtor in its bankruptcy case.

4. Attorneys must apply to the bankruptcy court to represent the debtor in a case, and Bankruptcy Rule 2014 requires the attorney to submit a verified statement setting forth the person's, "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants . . .," and such connections can disqualify the attorney from representing the debtor. Another potentially disqualifying factor is payment to the attorney by the debtor for legal fees paid within 90 days of filing the petition. The duty of the attorney to disclose any and all potentially disqualifying connections, interests, and fee receipts continues throughout the bankruptcy case.

B. <u>Background to Case</u>.

5. Geneva Steel Company, a Utah corporation, operated a steel mill in Utah County, Utah for a number of years. It filed a chapter 11 petition in the United States Bankruptcy Court for the District of Utah under Title 11, United States Code, on or

about February 1, 1999. A plan of reorganization was confirmed on or about December 6, 2000, and Geneva Steel Company emerged from chapter 11 in the form of numerous successor companies, including a managing corporation, Geneva Steel Holdings Corp., and several limited liability companies, including Geneva Steel LLC, Iron Ore Mines LLC, and Williams Farm LLC.

6. According to the plan of reorganization for Geneva Steel Company, the steel mill assets were transferred to Geneva Steel LLC, the iron ore mine was transferred to Iron Ore Mines LLC, the Williams Farm property was transferred to William Farms LLC, and the sole membership interests of these limited liability companies were transferred to Geneva Steel Holdings Corp.

7. Geneva Steel Holdings Corp. thereafter owned, managed and controlled the operations of all of the successor limited liability companies.

8. Defendant STEPHEN E. GARCIA, was a partner at a law firm, Hopkins & Sutter, and served as counsel to the Bondholders Committee in the Geneva Steel Company bankruptcy case, until on or about January 15, 2001, when defendant STEPHEN E. GARCIA became a partner at Kaye Scholer LLP and continued representing the Bondholders Committee for post-confirmation matters until at least October 26, 2001.

9. On or about January 15, 2001, Kaye Scholer LLP, through defendant STEPHEN E. GARCIA, began representing Geneva Steel

Holdings Corp. and the successor companies.

10. On or about January 25, 2002, defendant STEPHEN E. GARCIA applied for and became counsel for the debtor, Geneva Steel LLC, when it filed a chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Utah.

11. On or about September 23, 2002, defendant STEPHEN E. GARCIA applied for and became counsel for the debtors, Geneva Steel Holdings Corp. and Williams Farm LLC, when these successor companies each filed chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Utah.

12. When defendant STEPHEN E. GARCIA applied for and became counsel for debtors Geneva Steel LLC, Geneva Steel Holdings Corp., and Williams Farm LLC, he was required to truthfully disclose in affidavits filed in support of those debtors' applications for approval of his employment any and all potentially disqualifying connections and interests he had with the debtors, creditors, and any party in interest.

13. Defendant STEPHEN E. GARCIA had a continuing duty throughout his representation of the debtors to make truthful disclosure of any and all potentially disqualifying connections and interests he had with the debtors, creditors, and any party in interest.

C. **Relevant Entities and Individuals**

14. Albert Fried & Co., LLC (Albert Fried & Co.), was a

4

licensed broker/dealer with the United States Securities and Exchange Commission and the National Association of Securities Dealers. Between January 2001 and January 2002, Albert Fried & Co. became a 31 percent owner of the common stock of Geneva Steel Holdings Corp.

15. Albert Fried, Jr., a managing partner of Albert Fried & Co., became a director of the board of Geneva Steel Holdings Corp. effective on January 3, 2001 until he resigned on or about January 9, 2003.

16. Steelman, Inc. was a Delaware corporation formed by defendant STEPHEN E. GARCIA. Albert Fried, Jr. was the principal and majority shareholder, controlling director, President, and CEO of Steelman, Inc.

17. Steelman Realty LLC was a Delaware limited liability company formed by defendant STEPHEN E. GARCIA and whose founding members included defendant STEPHEN E. GARCIA, Albert Fried & Co., the Fried Group LLC, and others.

18. Albert Fried & Co. funded approximately $9.8 million of a term loan as exit financing for Geneva Steel LLC to succeed the Geneva Steel Company. In exchange for this loan, Geneva Steel Company paid Albert Fried & Co. a cash loan fee and 500,000 shares of Geneva Steel Holdings Corp., and released Albert Fried & Co. from a commitment it had made to purchase $10 million of Geneva Steel Company's stock.

19. After bankruptcy court approval of the term loan, Geneva Steel Company conditionally granted Albert Fried & Co. additional consideration for its loan by providing an option to purchase the Williams Farm property at a price of $1 million, even though the property had been previously appraised at a value of approximately $4,975,000. This additional consideration was neither disclosed to nor approved by creditors or the bankruptcy court prior to confirmation of debtor Geneva Steel Company's reorganization plan.

### The Scheme and Artifice to Defraud

20. The factual allegations in paragraphs 1 through 19 above are incorporated by reference and realleged as though fully set forth herein.

21. From on or about January 15, 2001 to on or about April 18, 2005, in the Central Division of the District of Utah and elsewhere, defendant STEPHEN E. GARCIA did knowingly devise and intend to devise a scheme and artifice to defraud creditors and the bankruptcy estates of debtors in possession, specifically by undertaking employment and accepting legal fees as counsel for the successor companies as debtors, including Geneva Steel LLC, Geneva Steel Holdings Corp., and Williams Farm LLC, while concealing his interests in and connections to Albert Fried & Co. and Albert Fried, Jr., and his connections to the debtor entities. As described below, defendant STEPHEN E. GARCIA

concealed his potentially disqualifying interests and connections during court appearances and in affidavits filed with the bankruptcy court and provided to creditors.

### Object of the Scheme and Artifice to Defraud

22. It was the object of the scheme and artifice to defraud for defendant STEPHEN E. GARCIA to serve as counsel and receive substantial legal fees for work on behalf of the Bondholders Committee of debtor Geneva Steel Company and the successor companies, while at the same time conducting business transactions with and performing legal services for Albert Fried, Jr., Albert Fried & Co., and others.

### The Manner and Means of the Scheme and Artifice to Defraud

23. It was a part of the scheme and artifice to defraud that before, during, and after defendant STEPHEN E. GARCIA provided and caused to be provided legal work for Geneva Steel Holdings Corp., Geneva Steel LLC, and Williams Farm LLC, he had potentially disqualifying relationships with and connections to the debtors, Albert Fried, Jr., Albert Fried & Co., and others which he fraudulently concealed from the bankruptcy court and creditors. Those potentially disqualifying relationships and connections included, among others, the following:

   a.  From a date prior to 1999 to on or about September 30, 2003 the defendant STEPHEN E. GARCIA represented a committee in the Raytech bankruptcy case, of which Albert Fried & Co., through Albert Fried, Jr., was a member.

7

b. In or about December 2000, defendant STEPHEN E. GARCIA drafted on behalf of Albert Fried & Co. a commitment letter and term sheet concerning a bridge loan of approximately $3.5 million that Albert Fried & Co. made to debtor Geneva Steel Company.

c. From on or about February 2, 2001 to on or about May 31, 2005, defendant STEPHEN E. GARCIA and his spouse opened a personal trading account at Albert Fried & Co., account no. 020-07020.

d. In early 2001, defendant STEPHEN E. GARCIA agreed to represent the successor companies in corporate and securities legal work and bankruptcy preparations and as debtor's counsel when the successor companies filed bankruptcies in the United States Bankruptcy Court for the District of Utah.

e. On or about August 14, 2001, defendant STEPHEN E. GARCIA presented on behalf of Albert Fried & Co. a proposal to the board of directors of Geneva Steel Holdings Corp. to reduce by $781,369.69 the price for Albert Fried & Co.'s option to purchase the Williams Farm property.

f. From on or about November 1, 2001 to on or about January 25, 2002, defendant STEPHEN E. GARCIA and Kaye Scholer LLP received approximately $600,000 in attorney fees within ninety days of the filing of the bankruptcy petition for Geneva Steel LLC for legal work unrelated to restructuring.

g. On or about January 25, 2002, defendant STEPHEN E. GARCIA caused to be filed in the Geneva Steel LLC bankruptcy case an AFFIDAVIT OF STEPHEN E. GARCIA IN SUPPORT OF THE DEBTOR'S APPLICATION FOR ORDER AUTHORIZING KAYE SCHOLER LLP AS ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION in which he made material omissions and the following material misrepresentations of fact:

> Kaye Scholer is a 'disinterested person' . . . in that its members, counsel, and associates:
> . . . .
>
> (e) Do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders,

by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker, or for any other reason.

h.  In or about April 2002, defendant STEPHEN E. GARCIA prepared on behalf of Albert Fried & Co. formation legal documents and papers for Steelman, Inc., the entity to which Albert Fried & Co. assigned its option to purchase the Williams Farm property.

i.  On or about April 23, 2002, defendant STEPHEN E. GARCIA presented on behalf of Albert Fried & Co. a proposal to the board of directors of Geneva Steel Holdings Corp. to further reduce by $141,853 to approximately $76,000 the price for the option to purchase the Williams Farm property.

j.  In or about May 2002, defendant STEPHEN E. GARCIA documented and perfected on behalf of Albert Fried & Co. a loan of approximately $250,000 from Albert Fried & Co. to an individual. The loan was unrelated to the Geneva Steel entities, their business, or any bankruptcy matters.

k.  From on or about August 26, 2002 to on or about September 30, 2002, defendant STEPHEN E. GARCIA reviewed, changed, and finalized on behalf of Steelman, Inc., which was owned by Albert Fried & Co., or it's principals the terms of a lease for the placement of a billboard on the Williams Farm property.

l.  On or about September 13, 2002, defendant STEPHEN E. GARCIA caused to be filed in the Geneva Steel Holdings Corp., Williams Farm LLC, and the other successor company bankruptcy cases an AFFIDAVIT OF STEPHEN E. GARCIA IN SUPPORT OF THE DEBTORS' MOTION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF KAYE SCHOLER LLP AS ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION in which he made material omissions and, among others, the following material misrepresentations of fact:

> Kaye Scholer is a "disinterested person" . . . in that its members, counsel, and associates:
>
> . . . .
>
> (e)  Do not have an interest materially

        adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker, or for any other reason.

m.   In or about the Spring of 2003, defendant STEPHEN E. GARCIA caused to be drafted on behalf of Albert Fried & Co. and Steelman, Inc. site development consulting agreements between and among Steelman, Inc. and others concerning the Williams Farm property.

n.   On or about March 18, 2003, defendant STEPHEN E. GARCIA provided to Albert Fried & Co. a draft commitment letter for Albert Fried & Co.'s use in making a loan to a California water filtrations project known as "Basin Water."

o.   In or about the Spring of 2003, defendant STEPHEN E. GARCIA personally invested funds in the Basin Water project.

p.   In or about June 2003, defendant STEPHEN E. GARCIA provided to Albert Fried & Co. a draft document for Albert Fried & Co.'s use to purchase a reclamation claim in a bankruptcy proceeding unrelated to any Geneva Steel matter.

q.   In or about June 2003, defendant STEPHEN E. GARCIA provided Albert Fried & Co. with a theory of allocation of interest payments on its loan to Geneva Steel Holdings Corp., that was favorable to Albert Fried & Co.

r.   In or about September 2003, defendant STEPHEN E. GARCIA personally invested approximately $200,000 in the Trellis on the Green project. Albert Fried, Jr. and entities controlled by him also invested in the same project.

s.   In or about November 2003, defendant STEPHEN E. GARCIA prepared on behalf of Albert Fried, Jr. and others formation legal documents and papers for Steelman Realty LLC, a company intended to own and manage a proposed multi-use high end condominium project in Provo, Utah known as "Trellis on the Green."

t.  On or about December 28, 2004, defendant STEPHEN E. GARCIA caused to be prepared on behalf of Albert Fried & Co. and others formation legal documents and papers for Trellis on the Green LLC.

u.  On or about December 28, 2004, defendant STEPHEN E. GARCIA caused to be prepared on behalf of Albert Fried & Co. formation legal documents and papers for Vineyard Investment Company, LLC, a company which intended to purchase the $9.8 million exit financing note held by Albert Fried & Co.

v.  On or about January 3, 2005, defendant STEPHEN E. GARCIA assisted a Provo city attorney in researching and writing legal papers concerning two residences located on property to be re-zoned for the Trellis on the Green project.

w.  On or about March 4, 2005, defendant STEPHEN E. GARCIA appeared in the United States Bankruptcy Court for the District of Utah in Salt Lake City, Utah on behalf of the debtor, Geneva Steel LLC, to argue its opposition to discovery motions brought by creditors. At this hearing, defendant STEPHEN E. GARCIA falsely and fraudulently informed the bankruptcy court that prior to confirmation of Geneva Steel Company's reorganization plan in December 2000, Albert Fried & Co.'s option to purchase the Williams Farm property had been disclosed to and approved by the court.

x.  On or about March 7, 2005, defendant STEPHEN E. GARCIA caused to be filed in the Geneva Steel LLC bankruptcy a SUPPLEMENTAL AFFIDAVIT OF STEPHEN E. GARCIA UNDER BANKRUPTCY RULE 2014(a), ostensibly to meet the continuing disclosure requirements of the bankruptcy law to identify disqualifying connections to and relationships with parties in interest. The affidavit fraudulently omitted all of the transactions, relationships, and connections described in paragraphs 23a through 23q, 23u and 23v above and contained the following material misrepresentations:

> In addition . . . Kaye Scholer remains a "disinterested person" . . . in that its members, counsel, and associates:
>
> . . . .

  (e) Do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker, or for any other reason.

y. From on or about January 25, 2002 to on or about January 28, 2005, defendant STEPHEN E. GARCIA and Kaye Scholer LLP, as debtors' counsel, applied for and were granted interim attorney fee payments and expense reimbursements totaling over $2 million.

## Count 1
## 18 U.S.C. § 157(2)
## (Bankruptcy Fraud)

24. The allegations in paragraphs 1 through 23 above are incorporated by reference and realleged as though fully set forth herein.

25. On or about March 7, 2005, in the Central Division of the District of Utah and elsewhere,

**STEPHEN E. GARCIA,**

defendant herein, having devised and intended to devise a scheme and artifice to defraud creditors and the bankruptcy estates of the successor companies, for the purpose of executing such scheme and artifice and attempting to do so, did knowingly file and cause to be filed a document in a proceeding under Title 11, United States Code, to wit: the Supplemental Affidavit of Stephen E. Garcia Under Bankruptcy Rule 2014(a) filed on March 7, 2005 in the District of Utah bankruptcy proceeding of Geneva Steel LLC,

Case No. 02-21455; all in violation of Title 18, United States Code, Sections 157(2) and 2(b).

## Count 2
## 18 U.S.C. § 1341
## (Mail Fraud)

26. The allegations in paragraphs 1 through 23 above are incorporated by reference and realleged as though fully set forth herein.

27. On or about December 15, 2004, in the Central Division of the District of Utah and elsewhere,

**STEPHEN E. GARCIA**,

defendant herein, having devised and intended to devise a scheme and artifice to defraud creditors and the bankruptcy estates of the successor companies and to obtain money by means of false and fraudulent pretenses, representations, and promises from creditors and the bankruptcy estates of the successor companies, for the purpose of executing such scheme and artifice and attempting to do so, did knowingly cause to be placed in a post office or authorized depository for mail matter a thing to be sent and delivered by the Postal Service according to the directions thereon, to-wit: Order Allowing Professional Fees entered on December 15, 2004 by the bankruptcy court in the District of Utah bankruptcy proceeding of Geneva Steel LLC, Case No. 02-21455, and mailed from the bankruptcy court clerk's office to all parties; all in violation of Title 18, United States Code,

Sections 1341 and 2(b).

## COUNT 3
## 18 U.S.C. § 152(2)
## (False Bankruptcy Oath)

28. The factual allegations in paragraphs 1 through 23 above are incorporated by reference and realleged as though fully set forth herein.

29. On or about March 7, 2005, in the Central Division of the District of Utah,

**STEPHEN E. GARCIA,**

defendant herein, did knowingly and fraudulently make a material false oath in the District of Utah bankruptcy proceeding of Geneva Steel LLC, Case No. 02-21455, by filing a Supplemental Affidavit of Stephen E. Garcia Under Bankruptcy Rule 2014(a) containing material omissions and misrepresentations of fact as summarized under paragraph 23 above; all in violation of title 18 United States Code, Section 152(2).

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

CARLIE CHRISTENSEN
Acting United States Attorney

_____
STEWART C. WALZ
CY H. CASTLE
Assistant United States Attorneys